WILLIAM BURN'S Administrators *v.* DANIEL H. YEIZER et al.

Where Y. and wife made a conveyance in trust of certain real estate and other property to secure B., L. & Co. in the payment of certain debts due them from Y.; and after the execution of the conveyance Y. proposed to I., the agent of B., L. & Co., to give new notes for the amount due B., L. & Co., and to secure the same by a new deed of trust upon the same land and other property embraced in the first deed, and that the first deed should thereupon be relinquished or satisfied, which proposition was accepted by I. as the agent of B., L. & Co.; the first deed being relinquished by B. the trustee, and I. the agent of B., L. & Co., without their consent at the time; and the trustee entered up satisfaction upon the first deed of trust, upon the payment of five thousand dollars, and the execution of new notes for the balance due; and this was done to enable Y. to put the land in the Union Bank; and if Y. should fail to obtain money from the bank, it was verbally agreed that B., L. & Co. should be placed where they were under the first deed of trust:— *Held*, that B., L. & Co., having received from I. the five thousand dollars and the new notes, that is a sufficient confirmation of the act of I. as their agent, in the execution of the release of the first deed of trust.

A court of equity could not interfere under the circumstances, to set aside the release, and reëstablish the satisfied deed.

The position of B., L. & Co. is now that of a general creditor of Y. upon the new notes, and as such cannot assert any lien against the land.

The administrators of Mrs. Y. are mere strangers in the transaction, and cannot interfere to prevent a recovery.

ON appeal from the superior court of chancery; Hon. Stephen Cocke, chancellor.

Eleanor Yeizer died in the year 1834, seized of lands in controversy. She left the following children, namely, Daniel H. Yeizer, Arch. L. Yeizer, George W. Yeizer, Charles R. Yeizer, Elizabeth L. Yeizer, Eleanor Monks (wife of Samuel Neill), Prudence G. (wife of Walter Strother), and Mary L. (wife of Thompson Strother).

Eleanor Yeizer left a will, and ordered the lands to be sold on time, and money equally divided among all her children, with certain qualifications.

Arch. L. and Daniel H. Yeizer, as administrators with the will annexed, sold the lands on the first day of January, A. D. 1835, to George W. Yeizer, for $23,269.80, in four equal instalments, due January 1, 1837, 1838, 1839, 1840; and made deed, reciting the periods of payment, and amount of the notes.

January 13, 1835, George W. Yeizer conveyed to Arch. L. and Daniel H. Yeizer, Eleanor Monks, and Charles R. Yeizer, four fifths of the land in fee-simple for $18,615.84, in four payments, recited in the deed, due January 1, 1837, 1838, 1839, 1840.

Arch. L. Yeizer and his wife conveyed February 20, 1837, recorded April 16, 1838, one undivided fifth of the land to Daniel H.

Charles R. and wife, May 31, 1839, also conveyed one undivided fifth to D. H. Yeizer.

Daniel H. Yeizer, on the 19th of November, 1836, conveyed to Robert H. Buckner, part in fee-simple, and his interest being three fifths in the residue of these lands to secure Briggs, Lacoste & Co. in certain enumerated debts, and any other liabilities they might thereafter incur by advancing money, accepting bills, and indorsing notes.

On the 12th February, 1838, Daniel H. Yeizer, W. H. Martin, and G. W. Yeizer, executed his note for $5,746.75, due at twelve months to Briggs, Lacoste & Co.

On the 28th March, 1839, Ballard, Franklin & Co. recovered judgment against Briggs, Lacoste & Co. for $2,560.59, on one of the notes named in the deed of November 19, 1836, which judgment they paid, and claim that the note of February 12, 1837, and the amount paid on the judgment are secured by the deed of November 19, 1836.

After this deed was made D. H. Yeizer proposed to give new notes to Briggs, Lacoste & Co., and new deed of trust on same lands, and relinquish the old; this proposition was made to Illsley, agent of Briggs, Lacoste & Co., who without their sanction assented to it; the old deed of November 19, 1836, formally released and entered satisfied by Buckner, acting at the instance of Illsley, acting for Briggs, Lacoste & Co.; and a new deed of trust executed December 6, 1839, by Daniel H. Yeizer and wife to A. L. Yeizer and J. F. Foute, reciting that Daniel H. was indebted to Briggs, Lacoste & Co. in three notes of $2,960.85 each, due January 1, 1841, 1842, and 1843, with interest, and conveying the lands, with power of sale on default. This deed conveys only part of the lands in controversy, conveyed by the first deed of November 19, 1836, omitting south-east quarter section 17; east half of north-east quarter, and north-west quarter of section 19; and east half of north-east quarter section 20; also the slaves named in the first, were not included in this second deed of trust.

Complainant is assignee from Briggs, Lacoste & Co. of the note of D. H. Yeizer for $5,746.75; and so also of the sum paid on the judgment, and thus entitled to all the rights of Briggs, Lacoste & Co. under these deeds.

Arch. L. and Daniel H. Yeizer, as administrators, have filed their bill to subject the lands sold by them to the statutory lien for the purchase-money due by Geo. W. Yeizer; heirs by agreement made no defence; final decree of sale had *pro confesso.* Daniel H. Yeizer has disposed of all the personal property in the deed of November 16, 1836, and there is nothing for complainant to look to but the land, and the object of the bill of Arch. L. and Daniel H. was to cut out the claim of complainant under the deeds of trust.

F. W. Petrie claims title to part of the lands by virtue of a

deed executed to him by part of the heirs of Mrs. Eleanor Yeizer, on the 3d of January, 1845, but had paid no part of the purchase-money.

These heirs, since Arch. L. and Daniel H., as administrators, filed their bill, have all agreed to divide, and have divided the lands as if they had descended to them, and as they were entitled to the proceeds. Complainant is willing to this division if fair, and he is allowed to receive the shares allotted to Daniel, Arch. L. and Charles R. Yeizer, as subject to his deeds of trust.

John T. Lloyd claims an interest in the lands by virtue of another deed of trust from Daniel H. Yeizer, which is alleged to be void, by reason of the debt being fictitious, or paid.

Buckner refused to sell under the released deed of trust. Complainant's bill prays an injunction against sale under decree in favor of the administrators; the release of the deed of November 19 to be cancelled, and the deed enforced for complainant; a partition of the lands be had; Lloyd's deed of trust be cancelled; an account be taken; and Daniel H., Arch. L., and Charles R. Yeizer's interests in the lands be sold to satisfy what is due complainant.

The supplemental bill states that Lewis, the commissioner of the court appointed at the suit of Arch. L. and Daniel H. as administrators, had, on the 14th of September, 1846, sold the lands on a credit of twelve months to various persons, namely, W. M. Pinckard, Mary L. Strother, Eleanor Neill, and Eliza M. Yeizer, the portions to each respectively being stated in the bill. That at and before the sale complainant gave notice of his claim and suit, and forbid it; that the lands were sold by collusion between the parties to the suit by the administrators, in parcels to suit themselves, and to defeat complainant; that Pinckard bought for A. L. Yeizer, and so did Eliza M.; A. L. Yeizer was the real purchaser, and neither had paid any of the purchase-money. Prays Pinckard be made defendant, and these sales annulled and set aside as fraudulent. The supplemental bill was filed March 18, 1847.

The chancellor decreed in favor of the defendants, and complainants appealed to this court.

*Geo. L. Potter* for appellants.

*Adams, Dixon* and *Freeman* on the same side.

*Guion* and *Baine* for appellees.

*W. C.* and *A. K. Smedes* on the same side for Pinckard.

Mr. Chief Justice SMITH delivered the opinion of the court.

This was an appeal from the superior court of chancery.

The record is voluminous, but the facts connected with the true points of controversy are neither numerous nor complicated.

The principal objects of the bill, and which alone it is material to notice, were, in the first place, to prove the cancellation of the release of a deed of trust, executed by Daniel H. Yeizer and wife to Robert H. Buckner, on the 19th of November, 1836, by which were conveyed to him in trust certain lands with other property, to secure Briggs, Lacoste & Co., in the payment of the debts therein specified and for other purposes; and in the second place, for a foreclosure and sale of the lands, in payment of certain demands, held as assignee by the complainants' intestate against the said Yeizer. The complainants rely upon the title derived from the administrators with the will annexed of Eleanor Yeizer, by whom the land was sold at an administrator's sale and conveyed to George H. Yeizer. The defendants claim title derived from the same source. Our first inquiry, therefore, is not whether the defendants rest their defence upon the superior title, but whether the said deed of trust which was satisfied or released could be set up in a court of equity and enforced against the lands. For it is upon that ground, and that ground alone, the complainants have based the claim for the relief which is prayed for in the bill.

A reference to the statements of the bill and the evidence in relation thereto, will be necessary in order to enable us to determine the question whether the complainants are entitled to have the said release cancelled or annulled, and the said deed of trust established and set up, with the incidents which attached upon its original execution.

The bill alleged, that after the making of the aforesaid deed of trust, the said D. H. Yeizer proposed to one Francis Illsley to give new notes for the amount then due by him to Briggs, Lacoste & Co., and to secure the same by a new deed of trust of the same land and property embraced in the first deed; and that the first deed should thereupon be relinquished or satisfied; which proposition was accepted by said Illsley, as the agent of Briggs, Lacoste & Co. The first deed of trust was then relinquished by Buckner, the trustee, and Illsley, without the sanction of Briggs, Lacoste & Co.; Buckner having acted under the direction of Illsley, as such agent. It is not stated in the bill that the release was procured by any fraudulent or improper artifice on the part of Yeizer, nor is it stated that it was made through mistake. It is true that in the prayer for relief, the release is referred to as the "mistaken release" made by Buckner and Illsley.

The testimony of Illsley leaves no room to doubt that the release was intended to be unconditional and absolute. Illsley testified that he was the agent of Briggs, Lacoste & Co., from 1836 to 1842. Briggs, Lacoste & Co. put claims in his hands against D. H. Yeizer of about eleven thousand dollars for collection. In 1838 he agreed with him to receive five thousand dollars, and to wait twelve months for the remainder. He received for the five thousand dollars a check which was afterwards paid, and a new note for the balance, when, by the advice of Buckner, he entered up satisfaction on the deed of trust. It was understood that Briggs, Lacoste & Co. should be put in no worse condition by the transaction. The object of this transaction was to enable Yeizer to put the land in the Union Bank, and if he should fail to obtain money from the bank, it was verbally agreed that Yeizer should place Briggs, Lacoste & Co. where they were in June, 1838.

It is alleged in the bill, that the release was made without the sanction of Briggs, Lacoste & Co.; but it is not denied that Illsley, as their agent, had full authority to make the arrangement. If, however, it was conceded that Illsley acted without authority, their subsequent acts in receiving the five thousand

dollars, and the new note, which was subsequently assigned by them, would be holden as a full confirmation of the release.

Holding that there was a full and unconditional discharge of the trust deed, it appears to us very manifest that it would be incompetent for a court of equity, under the circumstances alleged, to set aside the release and reëstablish the satisfied deed. Moreover, if the deed could be revived, it would necessarily relate back to the date of its execution, and, as a necessary consequence, carry with it all of the incidents which originally attached to it. On that supposition, the notes, to secure which it was executed, and which were never delivered to Yeizer, would be set up if the payment of them could be enforced. In that state of the case, the complainants would not be entitled to put the revived deed in use to enforce the payment of the new note, as it was not embraced by that deed, and was not given for an advance of money by the *cestuis que trust* to the grantor.

Holding that the deed could not be revived, or considered in equity as set up, the complainants stood in the relation of a general creditor of Daniel H. Yeizer, upon the new note, and as such, could not assert any lien against the land. As to the proceedings instituted by the administrators of Mrs. Eleanor Yeizer to enforce the statutory lien, they were mere strangers, and could not, therefore, interfere to prevent a recovery.

Let the decree be affirmed.

The appellant filed a petition for a reargument in this case, by his counsel, but the court refused to grant a reargument.